WARRIN v. WARRIN.   (No. 7591.)

(Supreme Court, Appellate Division, First Department.   July 9, 1915.)

PARTNERSHIP ⬤�ि꞊311—LIABILITY OF SURVIVING PARTNER—SPECIAL CONTRACT BETWEEN PARTNERS.

 Where partners agreed that the fair value in liquidation of all the assets, property, accounts, and good will of the business was $1,900, and that, in case of the death of either of them, the exclusive title to all the property, business, and good will of the firm should vest in the survivor, who should be the exclusive owner of the business, and that, as the purchase price of the half interest of the deceased partner the survivor should become indebted for, and pay to, the personal representative of the decedent $950, upon death of a partner, the firm not having declared any profits of which the decedent did not receive his share, such decedent not having been credited upon his account with the firm with profits not paid him, the survivor not having overdrawn his account, and not having withdrawn any sum from the firm assets as profits over those withdrawn by the decedent, his widow could not maintain an action for a general accounting against the survivor; her rights being limited to an action at law to recover the stipulated payment.

 [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 718–725; Dec. Dig. ⬤⟿311.]

Appeal from Special Term, New York County.

Action by Elizabeth J. Warrin, as executrix, etc., against Edmondson Warrin.   From an order denying his motion for judgment on the pleadings, defendant appeals.   Reversed, and motion granted.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Arnold O. Schramm, of New York City, for appellant.

Wilfrid N. O'Neil, of New York City, for respondent.

DOWLING, J.   The complaint herein sets forth that on or about June 1, 1905, George Warrin, now deceased, and the defendant, entered into an agreement in writing to conduct as copartners a business of decorating china under the firm name and style of Warrin & Son.   The agreement, which is annexed to the complaint and made a part thereof, shows that defendant succeeded George Warrin, Jr., then deceased, in the copartnership theretofore carried on under the name "Warrin & Son," and that George Warrin and Edmondson Warrin were each to have an equal interest in the business of the firm and to share equally in the losses and profits thereof during its continuance, the period of which was not fixed by the agreement.   As a consideration for his admission to the firm, the defendant was to pay the sum of $1,100 in four promissory notes, payable in 3, 6, 9, and 12 months, respectively, the receipt of which notes was acknowledged by the agreement.   Thereafter, on December 22, 1909, the partnership agreement was modified by a subsequent agreement in writing under seal, which is also annexed to and made a part of the complaint, reciting that defendant had paid and satisfied the promissory notes hereinbefore referred to, and that, as the parties desired to continue the business and provide for its continuation by either of the parties in the event of the death of the other,

it was agreed that George Warrin and the defendant should continue the business under the firm name and style of "Warrin & Son," and should share equally in the profits and losses of said business, and otherwise conduct the same as provided in the original articles of partnership. The agreement then continued:

"It is furthermore stipulated and agreed by the said George Warrin and Edmondson Warrin that the fair value in liquidation of all the assets, property, accounts, and good will of the said business conducted under the name 'Warrin & Son' is nineteen hundred ($1,900) dollars, and therefore it is mutually agreed that, in the event of the death of either the said George Warrin or Edmondson Warrin, the full and exclusive right, title, and interest in and to all the merchandise, fixtures, stocks, moneys, claims, accounts, rights, interests, business, and good will of the said business and copartnership carried on under the name of 'Warrin & Son,' shall immediately vest in the survivor, and such survivor shall from the time of the death of the other party be the exclusive and sole owner of the said business. It is further agreed that, as the purchase price of the half interest of such deceased party, the survivor shall become indebted and will pay to the executors, administrators, or other personal representative of such deceased party the sum of nine hundred and fifty ($950) dollars."

· The complaint sets forth the continuance of the business of the copartnership until June 16, 1914, when it was terminated by the death of George Warrin, who left a last will and testament, whereof the plaintiff is executrix. The complaint further alleges:

"Fourth. Upon information and belief, plaintiff alleges that on June 16, 1914, the date of the death of plaintiff's testator, there were large sums of money due and owing to plaintiff's testator, from the said firm of Warrin & Son, as and for his share of the profits of the said business, but the exact amount or nature thereof plaintiff is ignorant of, and that no account has ever been rendered by the said defendant of the assets of the said partnership and of the share of the plaintiff's testator in the profits at the time of his death on the 16th day of June, 1914, and that the assets of said partnership still remain unliquidated and undetermined.

"Fifth. That an account of the said copartnership between defendant and plaintiff's testator has been duly demanded of the defendant by plaintiff before the commencement of this action, but said defendant has neglected and refused, and still neglects and refuses, to make such accounting."

Defendant interposed an answer admitting the allegations in the complaint as to the execution of the agreements in question, and also making certain denials. From the order denying his motion for judgment on the pleadings, and from an order denying the resettlement thereof, the defendant now appeals. We believe that the complaint set forth no cause of action against the defendant, and that his motion for judgment on the pleadings should have been granted. The supplementary partnership agreement sets forth a clear and precise method of settling the interest of the deceased partner in the firm. It provides for the immediate devolution of the interest of the deceased partner upon the survivor, and automatically creates in such an event a liability upon his part to pay the representative of the deceased a fixed sum of $950. It was competent for the partners to determine the sum at which they would arbitrarily fix the entire value of their firm business as the basis on which an adjustment of affairs between the survivor and the representative of the deceased should be effected. The plaintiff claims that, besides this sum of $950, she is entitled to an accounting down

to the time of her testator's death, and payment of one-half of the profits that might be found to have been earned by the firm upon such an accounting. But there is no allegation that the firm ever declared any profits as such, of which plaintiff's testator did not receive his share, nor that plaintiff was credited upon his account with the firm with profits which had not been paid him, nor that defendant has overdrawn his account, nor that he had withdrawn any sum from the firm assets as profits over and above those withdrawn by the testator.

An examination of the language quoted from the supplementary agreement demonstrates that the property which was to be transferred to the survivor in consideration of his promise to pay $950 therefor embraces every possible item of firm property. It includes merchandise, fixtures, stock, moneys, claims, accounts, rights, interest, business, and good will. If profits had been earned by the firm, which had not been divided between its members, down to the time of the testator's death, they must be found included in one or more of these categories, for there is no other class of firm property in which they could be found. It is clear, therefore, that the intention of the parties was precisely what the agreement must be construed to mean—that the survivor should pay $950 in full satisfaction of every claim of the deceased partner in, to, or against the firm.

The case of Davenport v. Morrissey, 14 App. Div. 586, 44 N. Y. Supp. 29, affirmed 154 N. Y. 782, 49 N. E. 1095, is not to the contrary, for there it was provided that the interest of the deceased partner should be deemed to be of the value shown by the last previous inventory taken before his death, and that sum should be payable by the surviving partner to the executor or administrator of the deceased partner, and inventories were required to be made annually. The court held in that case that the provision in question simply established conclusively the value of the interest of the deceased partner at the time of the making of the inventory to be as shown thereby, which was not subject to be opened or impeached. The court held, however, in that case that such a provision did not bar the right of the estate of the deceased partner to claim his one-half of the profits from the time of the making of such inventory down to the date of his death.

In the present case it will be seen that the provision made is much more explicit, for there is enumerated with care every possible class of firm property and assets as being automatically transferred to the surviving partner, and the sum which he is to pay therefor is fixed definitely without reference to any other documents or books. This being so, the sole claim which plaintiff has under the articles of agreement between the partners is for the payment of $950, which the defendant agreed to pay for the interest of his deceased partner, and for that she has her action at law, and the present action in equity for an accounting cannot be sustained. We believe as well that the motion for a resettlement of the original order should have been granted, so as to accurately show the papers that were before the court when the motion was denied.

The second order appealed from, denying the resettlement, will therefore be reversed, with $10 costs and disbursements, and the mo-

tion to resettle the order as proposed granted. The order as resettled will then be reversed, with $10 costs and disbursements, and the defendant's motion for judgment on the pleadings will be granted, with $10 costs. All concur.